FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 27, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER G.,[1] | NO: 4:24-CV-05149-RLP |
| Plaintiff, | |
| v. | ORDER AFFIRMING THE COMMISSIONER'S DECISION |
| FRANK BISIGNANO COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | |

BEFORE THE COURT is an appeal from an Administrative Law Judge (ALJ) final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 10. The Court considered the matter without oral argument. For the reasons discussed below, the Court concludes the ALJ did not commit harmful legal error in

---

[1] Plaintiff's first name and last initial are used to protect his privacy.

[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Rules of Civil Procedure, Frank Bisignano is substituted for Leland Dudek as the Defendant in this suit.

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 1

evaluating Mr. G.'s symptom testimony or the medical evidence. Therefore, Mr. G.'s brief, ECF No. 10, is denied and the Commissioner's brief, ECF No. 14, is granted.

BACKGROUND

Mr. G. was 35 years old on the alleged onset date of July 12, 2018. Tr.31, 58. He has an Associate of Arts degree and has work experience as a custodian and an equipment operator. Tr. 59, 61-62.

Mr. G. filed this claim for disability insurance benefits and supplemental security income in July 2020.[3] Tr. 395-405. The claim was denied initially and upon reconsideration. Tr. 200-03, 205-14. Mr. G. appeared at a hearing in October 2023, and alleged he is unable to work due to bipolar, psychosis, anxiety, depression, and fatigue. Tr. 69. He testified that he has been hospitalized five times for psychosis, most recently in 2020. Tr. 79. Since 2020, he has had "[v]ery minimal" psychosis. Tr. 79. On December 29, 2023, the ALJ issued an unfavorable decision, Tr. 17-33, and the Appeals Council denied review. Tr. 1-6. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

---

[3] The record contains a previous ALJ decision regarding a prior application which found Mr. G. not disabled from February 24, 2015 to July 11, 2018. Tr. 93-107. Mr. G.'s alleged onset in the current claim is July 12, 2018, the day after the prior decision. Tr. 17-18, 57-58.

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 2

## STANDARD OF REVIEW

This Court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). If the evidence in the record "is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3(B).

1    The Commissioner has established a five-step sequential analysis to determine

2    whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-

3    (v), 416.920(a)(4)(i)-(v). At step one, if the claimant is engaged in "substantial

4    gainful activity," the Commissioner must find that the claimant is not disabled. 20

5    C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner considers the

6    severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii),

7    416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of

8    impairments which significantly limits [his or her] physical or mental ability to do

9    basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c),

10   416.920(c). At step three, the Commissioner compares the claimant's impairment to

11   severe impairments recognized by the Commissioner to be so severe as to preclude a

12   person from engaging in substantial gainful activity. 20 C.F.R. §§

13   404.1520(a)(4)(iii), 416.920(a)(4)(iii).

14   If the severity of the claimant's impairment does not meet or exceed the

15   severity of the enumerated impairments, the Commissioner must assess the

16   claimant's residual functional capacity (RFC), which is the claimant's ability to

17   perform physical and mental work activities on a sustained basis despite his or her

18   limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

19   At step four, the Commissioner considers whether, in view of the claimant's

20   RFC, the claimant is capable of performing work that he or she has performed in the

21   past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 4

not, the analysis proceeds to step five and the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Mr. G. has not engaged in substantial gainful activity since July 12, 2018, the amended alleged onset date. Tr. 20. At step two, the ALJ found that Mr. G. has the following severe impairments: bipolar disorder; schizoaffective disorder; and generalized anxiety disorder. Tr. 21.

At step three, the ALJ found that Mr. G. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 22. With respect to the RFC, the ALJ found Mr. G. has the capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

> He is able to understand, remember and carry out short, routine, repetitive instructions. He is able to sustain attention/concentration for 2-hour periods at a time and for 8 hours in the workday on short, routine repetitive instructions. He can use judgment in making work

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 5

decisions related to short, routine repetitive instructions. He requires an occupation with only occasional co-worker contact and supervision. He requires an occupation with only occasional contact with the public. He requires an occupation with set routine, procedures and instructions, and occasional changes during the workday. He can do work with no requirement to meet defined production quotas such as production line work. He can maintain regular attendance and be punctual within customary tolerances. He can perform activities within a schedule. He cannot drive vehicular equipment.

Tr. 24.

At step four, the ALJ found Mr. G. is capable of performing past relevant work as a car cleaner and industrial cleaner. Tr. 30. Alternatively, at step five, after considering and Mr. G.'s age, education, work experience, and the RFC, the ALJ found there are other jobs that exist in significant numbers in the national economy that Mr. G. can perform such as laundry worker, supply worker, and warehouse worker. Tr. 31-32.

Based on the adverse finding at step five, the ALJ determined that Mr. G. has not been under a disability, as defined in the Social Security Act, from July 12, 2018, through the date of the decision. Tr. 32.

## ANALYSIS

The ALJ found that Mr. G.'s testimony regarding the intensity, persistence, and limiting effects of his symptoms are not consistent with the evidence in the record. Tr. 25. The ALJ also rejected psychological opinion evidence from David Morgan, Ph.D., and Dana Harmon, Ph.D., who both assessed disabling limitations, and did not discuss the opinion of Philip Barnard, Ph.D. Mr. G. contends ALJ erred

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 6

in rejecting his testimony and in evaluating the medical opinion evidence. The Court concludes the ALJ did not commit reversible error and that the ALJ's findings are supported by substantial evidence.

**A.    Symptom Testimony**

A two-step process applies to an ALJ's assessment of a claimant's testimony regarding subjective pain and symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). Second, if there is such evidence and there is no sign of malingering, the claimant's testimony should generally be accepted unless there is clear and convincing evidence in support of rejection. *See Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). "[T]he ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Here, although the ALJ agreed with Mr. G. that his "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms," the ALJ rejected Mr. G.'s testimony regarding the severity of his symptoms, reasoning

that they were "not entirely consistent with the medical evidence and other evidence in the record." Tr. 25.

First, the ALJ found that Mr. G.'s daily activities are "nearly unlimited." Tr. 26. The ALJ noted Mr. G's hearing testimony described a wide range of activities of daily living inconsistent with his allegations of disability such as all personal care, household chores, laundry, shopping, pay bills, riding a bicycle several times per week, walking 30 minutes a day five days a week, reading, looking up information using a search engine on his phone, emailing, texting, traveling for one week in 2022 to visit family in Arizona, getting along well with family, and having friends. Tr. 26, 73-78.

Mr. G. contends these activities are not transferrable to a work environment. ECF No. 10 at 9-10 (citing *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017)). While allegations of disabling pain may be discredited if a claimant is able to spend a substantial part of the day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989), an ALJ may also consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Even if the claimant experiences some difficulty or pain, his daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. It is not the court's role to second guess an

1  ALJ's reasonable interpretation of a claimant's testimony. *Rollins v. Massanari*, 261

2  F.3d 853, 857 (9th Cir. 2001); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.

3  2002) (affirming an ALJ's decision discounting a claimant's testimony after finding

4  that the claimant "was able to perform various household chores such as cooking,

5  laundry, washing dishes, and shopping"). Here, the ALJ's determination that Mr. G.

6  engaged in a wide range of daily activities inconsistent with disabling limitations is

7  reasonably supported by substantial evidence.

8      Second, the ALJ found that after his last hospitalization in 2020, Mr. G.

9  experienced improvement and a reduction in symptoms. Tr. 26. The record reflects a

10  prior hospitalization in 2015, but at the time of the alleged onset date in August

11  2018, Mr. G. was doing well and consistently taking his medication. Tr. 1464. The

12  ALJ cited records indicating that in 2018, Mr. G. endorsed anxiety but denied a

13  depressed mood, and in 2019, his mood was good and stable, he was working two

14  part-time jobs, and things were going well. Tr. 27, 624-26, 1463-65. The ALJ found

15  this portion of the record indicates that Mr. G. was generally stable. Tr. 27.

16      In March 2020, Mr. G. was arrested and then involuntarily admitted to the

17  hospital for psychiatric evaluation and treatment after an incident where he shouted

18  at or hit a bus driver. Tr. 549, 597. Mr. G.'s mother indicted there were social and

19  situational stressors since he had lost his job and car, was kicked out of his brother's

20  house, and was living in a trailer with a "bunch of drug users," and he had recently

21

used methamphetamine. Tr. 607. He said he felt a little bit anxious and was admitted for psychosis. Tr. 549-56, 618.

By mid-March 2020, Mr. G. was doing better, but still had some symptoms and was not yet stable. Tr. 1016-20. He was discharged to a less restrictive alternative in April 2020, and treatment notes indicate he lacked insight into why he was involuntarily detained and had poor judgment based on his aggressive and risky behavior before admission. Tr. 1091-97. Nevertheless, on discharge he had normal thought content, adequate attention and perception, and no paranoid delusions or irritable mood. Tr. 1096-97.

In May 2020, Mr. G. violated the terms of his least restrictive alternative. Tr. 595-99. The police were called because he was throwing rocks at a facility worker and threatening to kill him and was drinking from bottles of alcohol in the lobby. Tr. 595, 987-88. He was readmitted to the hospital and had a positive drug test for methamphetamines and THC and was noted to be noncompliant with medication. Tr. 987-88. Upon discharge two weeks later, Mr. G.'s mental status exam findings were mostly normal. Tr. 992-93

The ALJ acknowledged that after discharge in late May 2020, Mr. G. experienced some waxing and waning of symptoms but found that the overall record shows a significant and sustained improvement. Tr. 28. For example, in June 2020, he reported doing well since his release, was in a good mood, and acknowledged struggling with substance abuse but denied current use. Tr. 1486-89. He did not have

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 10

any psychotic symptoms. A mental status exam noted euthymic mood and flat affect but was otherwise normal. Tr. 1486-89. By September 2020, Mr. G. was living on his own in supportive housing and was looking for work. Tr. 1471.

Thereafter, the ALJ noted a general absence of symptoms and unremarkable exam findings from approximately March 2021 through at least August 2023. Tr. 28. During this period, Mr. G. reported looking for part-time work, but his therapist suggested that transportation, rather than any alleged symptoms, was a barrier to work. Tr. 2405. In March 2021, Dr. Knight-Richardson found Mr. G. had no signs or symptoms of schizoaffective disorder, no mania, no weird thoughts, no clinical depression, no hallucinations, paranoia, or delusions, and he was stable on current medications. Tr. 28, 1510-11. His mood, insight, and judgment were good, and memory was intact. Tr. 1510-11. In June 2021, Mr. G. reported his "mood is as good as he has ever been." Tr. 1530. The ALJ observed that while Mr. G. made subjective reports that he could not sustain full-time work due to lack of energy and focus, treatment notes generally indicate no serious symptoms and unremarkable mental status exams over the longitudinal period. Tr. 28. By August 2023, Mr. G. was living independently in sober housing. He had finished mental health court, was taking medications as prescribed, and had completed and been discharged form substance use treatment. Tr. 1571, 2407-09

Mr. G. argues (1) the record does not support significant improvement and cites records showing mental health symptoms; (2) the ALJ failed to consider the

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 11

1     nature of bipolar disorder and that symptoms may be cyclical; and (3) that no doctor

2     opined that Mr. G. is capable of working. ECF No. 10 at 11-12.

3         First, Mr. G. cites records indicating various symptoms and complaints. ECF

4     No. 10 at 11. However, the ALJ acknowledged some mixed findings and complaints

5     before and after the 2020 hospitalization, such as instances of anxiety, restricted

6     affect, low energy, anger, irritability, euthymic mood, flat affect, fatigue, lack of

7     energy and focus, but observed that treatment notes generally indicate no serious

8     symptoms or significant findings on mental status exams over the longitudinal

9     record. Tr. 27-28. Mr. G. asserts the ALJ found he "did not manifest any

10     symptoms," ECF No. 10 at 11, but this is incorrect as the ALJ referenced Mr. G.'s

11     symptoms in the record and identified mental limitations which were included in the

12     RFC. Where evidence is susceptible to more than one rational interpretation, it is the

13     ALJ's conclusion that must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

14     Cir. 2005).

15         Second, although Mr. G. argues the ALJ did not consider the cyclical nature

16     of bipolar disorder, ECF No. 10 at 12, the ALJ specifically considered the waxing

17     and waning of symptoms but found the record reflects significant and sustained

18     improvement and independent living. Tr. 28. This is a reasonable interpretation of

19     the evidence. Lastly, although Mr. G. argues no doctor found him capable of

20     working, the ALJ found the opinions of Dr. Mathew Comrie and Dr. Suzanne Castro

21     persuasive and included the mental limitations they assessed in the RFC finding,

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 12

which is consistent with the ability to work. Tr. 29-30, 119-35, 156-97. The ALJ's findings are supported by substantial evidence.

## B.     Medical Opinions

Mr. G. contends the ALJ failed to consider the opinion of Phillip Barnard, Ph.D., and failed to properly consider the opinions of David Morgan, Ph.D., and Dana Harmon, Ph.D. ECF No. 10 at 13-19. The regulations provide that an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c, 416.920c. Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required, to explain how other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see* 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

### 1.  *Philip Barnard, Ph.D.*

In April 2015, Dr. Barnard completed a DSHS Psychological/Psychiatric Evaluation form and diagnosed bipolar disorder and anxiety disorder. Tr. 2451-55. Dr. Barnard assessed marked limitations in six functional areas, including the ability to understand, remember and persist in tasks with detailed instructions; the ability to perform activities within a schedule and maintain regular attendance; the ability to adapt to changes in a routine work setting; the ability to communicate and perform

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 13

1    effectively in a work setting; and the ability to complete a normal work day and

2    work week without interruptions from psychologically based symptoms.  Tr. 2453.

3          The ALJ did not mention or evaluate the persuasiveness of Dr. Barnard's

4    opinion and Mr. G. contends this is reversible error. ECF No. 10 at 14. The Court

5    agrees the ALJ should have mentioned Dr. Barnard's opinion because the ALJ must

6    evaluate the persuasiveness of all medical opinions in the record. 20 C.F.R. §§

7    404.1520c, 416.920c. However, it may be harmless error to overlook a medical

8    opinion if the error is "inconsequential to the ultimate nondisability determination"

9    and the reviewing court "can confidently conclude that no reasonable ALJ, when

10   fully crediting the testimony, could have reached a different disability

11   determination." *Marsh v. Colvin*, 792 F.3d 1170, 1172–73 (9th Cir. 2015) (quoting

12   *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006)).

13         Dr. Barnard's opinion was rendered in April 2015, three years before the

14   alleged onset date of July 12, 2018. Tr. 2454. "Medical opinions that predate the

15   alleged onset of disability are of limited relevance." *Carmickle v. Comm'r of Soc.*

16   *Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Additionally, Dr. Barnard's

17   opinion was considered (and given little weight) in a prior claim which resulted in a

18   final decision that Mr. G. was not disabled from February 24, 2015 to July 11, 2018.

19   Tr. 17, 57-58, 103-04. Under these circumstances, Dr. Barnard's opinion is not

20   relevant to the current claim and no reasonable ALJ would find it persuasive in the

21   instant case. Any error in not addressing the opinion is harmless.

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 14

### 2. David Morgan, Ph.D. and Dana Harmon, Ph.D.

Dr. Morgan completed a DSHS Psychological/Psychiatric Evaluation form in July 2020 and diagnosed unspecified anxiety disorder and bipolar disorder. Tr. 1493-97. He assessed marked limitations in eight functional areas: the ability to perform work activities within a schedule and maintain attendance; perform routine tasks without special supervision; adapt to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; complete a normal work day and work week without interruptions from psychologically based symptoms; and set realistic goals and plan independently. Tr. 1495.

Later that month, Dr. Harmon completed a DSHS Review of Medical Evidence form and reviewed Dr. Morgan's 2020 evaluation and records from 2015. Dr. Harmon found the diagnoses made by Dr. Morgan partially supported by objective medical evidence. Tr. 1550. Dr. Harmon observed:

> However, all the recent information in this referral is based just on [Mr. G.'s] self-report. It is also unclear how much [Mr. G.'s] drinking and drug use have contributed to - or are perhaps much of the reason for - his mental health difficulties. In addition, much of this information raises 'red flags' about [Mr. G.'s] credibility, such as his dishonesty with Dr. Morgan and his work history and history with drugs and alcohol and his earlier dishonesty with Dr. Barnard about his drinking.

Tr. 1550. Nonetheless, Dr. Harmon opined that the severity and functional limitations assessed by Dr. Morgan were supported by the medical evidence,

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 15

assuming that other records corroborate Dr. Morgan's conclusions and Mr. G.'s credibility. Tr. 1550-51.

Dr. Morgan completed a second DSHS form in July 2022 and diagnosed social anxiety disorder and bipolar disorder. Tr. 1575-76. He assessed the same marked limitations, except the ability to set realistic goals and plan independently was assessed as only moderately limited. Tr. 1576.

The ALJ found the opinions of Dr. Morgan and Dr. Harmon are not persuasive regarding marked limitations. Tr. 30. Regarding supportability, the ALJ found the doctors provided some support for their opinions, but they did not consider the entire record. Tr. 30. Regarding consistency, the ALJ found Dr. Morgan's and Dr. Harmon's opinions are inconsistent with Mr. G.'s testimony which indicated a nearly unlimited range of daily activities, as discussed above. Tr. 30.

For example, the ALJ noted the 2020 opinions were given shortly after Mr. G.'s last hospitalization, but Mr. G. testified that he had minimal symptoms and psychosis since then. 30, 79. The ALJ also noted Dr. Morgan's mental status exam found an anxious mood, but otherwise Mr. G. was cooperative with normal affect, thought process, orientation, perception, memory, fund of knowledge, abstraction, insight and judgment. Tr. 1497. The ALJ pointed out Dr. Harmon observed that Mr. G. was not candid with Dr. Morgan about his substance abuse history. Tr. 30, 1551. In July 2022, Mr. G. reported some depression and bipolar symptoms to Dr. Morgan, but also told the doctor his mania was controlled with medication, and he only had

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 16

some situational nervousness and no major anxiety attacks in a while. Tr. 30. Mental status exam results in 2022 indicate Mr. G. was cooperative with normal mood and affect and every category was within normal limits. Tr. 30, 1578.

Mr. G. argues that Dr. Morgan's lack of findings does not mean his symptoms do not impact his ability to sustain work activity. ECF No. 10 at 17. However, the ALJ did not find that Mr. G. has no symptoms or that his functioning is not impacted by symptoms; indeed, the ALJ included numerous mental limitations in the RFC. Tr. 24. Mr. G. argues that anxious mood and poor concentration in the 2020 exam support Dr. Morgan's assessment, but the ALJ's finding is reasonable and based on the record. Mr. G. also argues he was only able to perform a wide range of daily activities because his stress was minimized by not working. ECF No. 10 at 17-18. However, as discussed above, the ALJ's finding regarding daily activities is supported by substantial evidence.

Lastly, the ALJ found the opinions of Dr. Morgan and Dr. Harmon were provided for a state agency and are not based on the disability standard of the Social Security Act. Tr. 30. Mr. G. correctly observes that the purpose for which medical reports are obtained does not provide a valid basis for rejecting them. *Lester*, 81 F.3d at 832. However, as discussed above, the ALJ's other reasons are supported by substantial evidence. Thus, any error in considering the opinions is harmless because the outcome is unchanged. *See Carmickle*, 533 F.3d at 1162.

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 17

CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1.    Mr. G.'s Brief, **ECF No. 10**, is **DENIED**.

2.    Defendant's Brief, **ECF No. 14**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** May 27, 2025.

REBECCA L. PENNELL
United States District Judge